IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| SAN JOSE ) | |
| CONSTRUCTION GROUP, INC. ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:05cv1148 |
| ) | |
| METROPOLITAN WASHINGTON ) | |
| AIRPORTS AUTHORITY, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION**

This contract dispute grows out of a construction project at Washington Dulles International Airport ("The Airport"). The general contractor, San Jose Construction Group, Inc. ("San Jose") sues the Airport operator and manager, Metropolitan Washington Airport Authority ("MWAA"), for breach of contract. Although the contract claims are state law claims, San Jose asserts that there is a sufficient federal interest present in this case to warrant federal question jurisdiction. At issue, therefore, on a threshold dismissal motion is whether San Jose's state law breach of contract claims meet the "arising under" standard for federal question jurisdiction under 28 U.S.C. § 1331.

**I.**

The material facts are undisputed and may be succinctly stated.[1] Plaintiff San Jose was a

---

[1] See *Velasco v. Government of Indonesia*, 370 F.3d 392, 398 (4th Cir. 2004) ("[W]hen a defendant challenges subject matter jurisdiction via a Rule 12(b)(1) motion to dismiss, the district court may regard the pleadings as mere evidence on the issue and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment."); Wright

general contractor hired to perform construction work for MWAA. On November 17, 2004, MWAA terminated San Jose, alleging that San Jose had repeatedly defaulted on its contractual obligations. According to MWAA, San Jose's various breaches of contract caused MWAA to suffer approximately $7.5 million in damages. Accordingly, MWAA sought satisfaction from San Jose and Acstar, San Jose's surety, pursuant to a surety bond San Jose executed. San Jose and Acstar refused MWAA's demands, maintaining that San Jose had not breached the parties' construction contract. MWAA subsequently sued both San Jose and Acstar in Loudoun County Circuit Court on October 11, 2005 for breach of contract and breach of the surety agreement. *See Metropolitan Washington Airports Authority v. Acstar Insurance Co. & San Jose Construction Group, Inc.*, Law No. 34944 (Loudoun County Circuit Court). Shortly thereafter, on October 14, 2005, San Jose served[2] the instant action against MWAA, alleging that its performance was satisfactory in all respects, and that MWAA wrongfully terminated the contract, causing San Jose to suffer $4.5 million in damages. In response, MWAA filed the pending motion to dismiss on November 3, 2005. Accordingly, the question presented is whether San Jose's state law claims that MWAA breached the parties' construction agreement implicate a sufficient federal interest, thereby triggering federal question jurisdiction pursuant to 28 U.S.C. § 1331.

## II.

Federal district courts have "original jurisdiction of all civil actions *arising under* the

---

and Miller, FEDERAL PRACTICE AND PROCEDURE: Civil 3d § 1363 (same). In any event, the material facts here are undisputed.

[2]San Jose actually filed its complaint in this case on October 4, 2005, but service on MWAA did not occur until ten days later. MWAA served its complaint in the Loudoun County case on San Jose on October 12, 2005, two days prior to being served with the complaint in this case.

Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331 (emphasis added). This grant of federal question jurisdiction is in large part the federal courts' *raison d'être*, and not surprisingly, therefore, few statutory phrases have been as extensively litigated and elucidated as "arising under."[3] The bulk of that litigation, which focuses on whether a particular claim is created by federal law, is inapposite here as San Jose's breach of contract claims are plainly state law claims. Yet, the fact that San Jose's claims are created by state law does not, by itself, foreclose federal question jurisdiction; instead, there exist circumstances where there is federal question jurisdiction over a state law claim, namely where "the vindication of a right under state law necessarily turn[s] on some construction of federal law." *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 9 (1983).[4] Leading commentators have suggested that for purposes of § 1331 an action arises under federal law if, to secure the relief sought a plaintiff will be obliged to establish both the correctness and the applicability to the case of a proposition of federal law.[5] Importantly, however, the "mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction." *Merrell Dow, Inc. v. Thompson*, 478 U.S. 804, 813 (1986). Rather, federal jurisdiction over claims created by state law is predicated on the presence of a substantial federal interest. *Interstate Petroleum Corp. v.*

---

[3] *See generally*, Wright, Miller & Cooper, FEDERAL PRACTICE AND PROCEDURE 2d § 3562 (tracing common law explication of meaning of "arising under").

[4] *See also Garvin v. Alumax of South Carolina, Inc.*, 787 F.2d 910, 914 (4th Cir. 1986) ("Even though the claim is created by state law, a case may arise under a law of the United States if the complaint discloses a need for determining the meaning or application of such a law.") (internal citations omitted).

[5] *See generally*, Wright, Miller & Cooper, FEDERAL PRACTICE AND PROCEDURE 2d § 3562. *See also* P. Bator, P. Mishkin, D. Shapiro & H. Wechsler, HART & WECHSLER'S THE FEDERAL COURTS AND THE FEDERAL SYSTEM 889 (2d ed. 1973).

*Morgan*, 249 F.3d 215, 219 (4th Cir. 2001); *see also Merrell Dow*, 478 U.S. at 813, 814 n.12 (noting that the "mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction"; ... the jurisdictional inquiry is essentially "an evaluation of the nature of the federal interest at stake").

The nature of the federal interest at stake—and hence whether federal jurisdiction exists—"is generally determined by the 'well-pleaded complaint' rule." *Childers v. Chesapeake & Potomac Tel. Co.*, 881 F.2d 1259, 1261 (4th Cir. 1989) (citations omitted).[6] Under the "well-pleaded complaint" rule, whether a cause of action arises under the Constitution or a federal law "must be determined from what necessarily appears in the plaintiff's statement of his own claim in the bill or declaration, unaided by anything alleged in anticipation of [sic] avoidance of defenses which it is thought the defendant may interpose." *Franchise Tax Bd.*, 463 U.S. at 10 (1983) (quoting *Taylor v. Anderson*, 234 U.S. 74, 75-6 (1914)).[7] Accordingly, the nature of the federal interest at issue depends entirely on what a plaintiff asserting such a claim must plead, and is independent of any federal defenses a defendant may raise.

At the outset, it is important to note that there is nothing in the nature of MWAA itself that warrants federal question jurisdiction. MWAA is not a federal entity; the chartering

---

[6] *See also Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987) ("It is long settled law that a cause of action arises under federal law only when the plaintiff's well-pleaded complaint raises issues of federal law.").

[7] *See also Caterpillar Inc. v. Williams*, 482 U.S. 386, 391 (1987) (federal jurisdiction exists "only when a federal question is presented on the face of the plaintiff's properly pleaded complaint"); *Arthur Young & Co. v. City of Richmond*, 895 F.2d 967, 969 (4th Cir. 1990) (same).

legislation specifically notes that MWAA is independent of the federal government.[8] MWAA is a creation of state law, established by a joint compact[9] between Virginia and the District of Columbia for the purpose of leasing and operating the Airport from the federal government.[10] And significantly, both the Virginia and the District of Columbia enabling statutes creating the compact make clear that courts of the Commonwealth of Virginia are vested with original jurisdiction of "all actions brought by or against [MWAA], which courts shall in all cases apply the law of the Commonwealth of Virginia." *See* Va. Code § 5.1-173(A); D.C. Code Ann. § 9-922.[11] For these reasons, WMAA's status furnishes no basis for federal question jurisdiction.

San Jose recognizes this, but cites *Washington-Dulles Transportation, Ltd. v. MWAA* for the proposition that federal courts nonetheless retain concurrent jurisdiction over all claims involving MWAA. 263 F.3d 371 (4th Cir. 2001). San Jose misreads *Washington-Dulles*. That case stands for the far narrower proposition that federal courts have subject matter jurisdiction to

---

[8]*See* 49 U.S.C. § 49106(a) (noting that MWAA is "independent of Virginia and its local governments, the District of Columbia, ***and the United States Government***") (emphasis added); Va. Code § 5.1-153 (noting that MWAA is a "public body corporate and politic and independent of all other bodies"); D.C. Code Ann. § 9-902 (same); *see also United States ex. rel. Blumenthal-Kahn Elec. Ltd. Partnership v. American Home Assur. Co.*, 219 F.Supp.2d 710, 714 (E.D.Va.,2002) ("...MWAA is not a creature or part of the federal government, but is instead a political subdivision created by state statutes, that is independent of the federal government."); *see* also *United States ex. rel. Blumenthal-Kahn Elec. Ltd. v. Am. Home Assur. Co.*, 219 F.Supp.2d 710, 711 (E.D. Va. 2002) (noting that MWAA is not a federal agency).

[9]*See* Pub. L. No 99-5, 100 Stat. 3341 (1986), *as amended*, *codified at* 49 U.S.C. §§ 49101, *et seq*.; D.C. Code Ann. § 9-901, *et seq*.; Va. Code §§ 5.1-152, *et seq*.

[10]*See* Va. Code §§ 5.1-153 to 5.1-154, § 5.1-156(B); D.C. Code Ann. §§ 9-902 to 9-903.

[11]*See also Washington-Dulles Transportation, Ltd. v. MWAA*, 263 F.3d 371, 374 (4th Cir. 2001) (noting Congress' recognition that state law would govern legal actions involving MWAA).

resolve disputes pertaining to the solicitation or award of MWAA contracts.  When it leased the Airport to MWAA, Congress retained only a "continuing but limited" federal interest in its operation.  *See* 49 U.S.C. § 49101(3).  The federal interest is limited to ensuring that MWAA solicits and awards contracts in a fair and open process.[12]  By contrast, nothing in the enabling legislation or MWAA's lease suggests that the federal interest also extends to the administration and management of MWAA's contracts after they have been awarded.  Because the plaintiff in *Washington-Dulles* challenged the propriety of MWAA's contract award to another vendor, federal question jurisdiction was proper given that the plaintiff's claim in that case directly implicated the clearly-expressed federal interest in ensuring that Airport contracts are awarded on the basis of free and open competition.  *See Washington-Dulles*, 263 F.3d at 375-76.

Unlike the claim in *Washington-Dulles*, San Jose's claims here do not implicate any federal interest in the Airport.  In its complaint, San Jose avers that MWAA administered the contract in violation of certain provisions contained in MWAA's Contracting Manual and wrongfully terminated San Jose.  The Contracting Manual is a comprehensive guide covering all facets of MWAA's contracting, and some chapters govern the solicitation and award of contracts, and others govern the administration and termination of contracts.  San Jose's claims rely on the latter chapters, not the former.  Specifically, San Jose seeks relief under five separate causes of action, each styled as a "breach of contract" claim, alleging that MWAA improperly changed the terms of the parties' contract and then terminated San Jose.  Each of these claims

---

[12]*See* 49 U.S.C. § 49104(a)(4) (requiring MWAA to "obtain complete and open competition [in the award of contracts] through the use of published competitive procedures"); 49 U.S.C. § 49106(g) (noting that MWAA's contracts may be reviewed to ensure they "were ***awarded*** by procedures that follow sound Government contracting principles." (emphasis added).

alleges wrongful behavior *after* MWAA awarded San Jose the contract at issue; there is no allegation of misconduct in the solicitation or award of that contract. The scope of the federal interest in MWAA's contracts extends to the solicitation and awarding of contracts, but not to the administration and termination of contracts after they have been awarded. Accordingly, San Jose's claims that MWAA violated the Contracting Manual by improperly administering and terminating the parties' contract do not implicate any "continuing but limited" federal interest in the Airport.[13]

Because San Jose's allegations do not implicate the "limited federal interest" in free and open competition in the solicitation and award of MWAA contracts, San Jose's claims do not meet the "arising under" standard for federal question jurisdiction under § 1331. Accordingly, the Court lacks subject matter jurisdiction to adjudicate San Jose's claims, and the case must therefore be dismissed. An appropriate Order will issue.

_____/s/_____

Alexandria, Virginia  
February 14, 2006

T. S. Ellis, III  
United States District Judge

---

[13] *Cf. Washington-Dulles Transportation*, 263 F.3d at 376 ("Federal jurisdiction to enforce lease provisions involving procurement procedures is consistent with the structure of the relevant statutes and the interplay between those statutes and the Enabling Act.") *with Gull Airborne Instruments, Inc. v. Weinberger*, 694 F.2d 838, 842-43 (D.C. Cir. 1982) ("Unlike the regulations governing the award of contracts ... the regulations governing termination of contracts for default are not designed to foster competition. ..."). *See also See* Va. Code § 5.1-173 (noting that Virginia law governs claims pertaining to the performance or termination of MWAA contracts); D.C. Ann. § 9-922 (same).